UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AVERY GILBERT,

                    Plaintiff,

        v.

JO ANNE B. BARNHART, Commissioner of
Social Security,

                    Defendant.

CASE NO.     C04-5478RBL

REPORT AND
RECOMMENDATION

Noted for October 7, 2005

Plaintiff, Avery Gilbert, has brought this matter for judicial review of the denial of his application for supplemental security income ("SSI") benefits.  This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the undersigned submits the following report and recommendation for the Honorable Ronald B. Leighton's review.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is forty-three years old.[1] Tr. 27.  He has a general equivalency diploma and past work experience as an electrician and laborer. Tr. 17, 63, 68.

---

[1]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

Plaintiff filed an application for SSI benefits on February 23, 2000, alleging disability as of January 1, 1999, due to severe depression and arthritis. Tr. 17, 56.  His application was denied initially and on reconsideration. Tr. 27-29, 38.  Plaintiff requested a hearing, which was held on July 12, 2002, before an administrative law judge ("ALJ"). Tr. 198.  At the hearing, plaintiff, represented by counsel, appeared and testified, as did a vocational expert and a lay witness. Tr. 198-224.  Also at the hearing, plaintiff amended his alleged onset date of disability to June 1, 2001. Tr. 18, 22, 201.

On November 25, 2002, the ALJ issued a decision determining plaintiff to be not disabled, finding in relevant part as follows:

(1)    at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability;

(2)    at step two, plaintiff had a "severe" impairment consisting of a status post fractured left leg;

(3)    at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4)    at step four, plaintiff had the residual functional capacity to perform sedentary work, which precluded him from performing his past relevant work; and

(5)    at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 20, 22-23.  Plaintiff's request for review was denied by the Appeals Council on June 22, 2004, making the ALJ's decision the Commissioner's final decision. Tr. 4; 20 C.F.R. § 416.1481.

On August 12, 2004, plaintiff filed a complaint in this court seeking review of the ALJ's decision. (Dkt. #1 and #2).  Specifically, plaintiff argues that decision should be reversed and remanded for further administrative proceedings, for the following reasons:

(a)    the ALJ erred in evaluating plaintiff's physical condition;

(b)    the ALJ erred in evaluating plaintiff's mental condition;

(c)    the ALJ erred in assessing plaintiff's credibility;

(d)    the ALJ erred in evaluating the lay witness testimony; and

(e)    the ALJ erred in conducting his step five analysis.

For the reasons set forth below, the undersigned agrees that the ALJ erred in evaluating plaintiff's mental condition, and therefore recommends the ALJ's decision be reversed and remanded to the Commissioner for further administrative proceedings.

DISCUSSION

This court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Fife v. Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); <u>Carr v. Sullivan</u>, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the court must uphold the Commissioner's decision. <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984).

I.      The ALJ Properly Evaluated Plaintiff's Physical Condition

Plaintiff argues the additional evidence that he submitted to the Appeals Council shows he cannot perform at the sedentary level of exertion as found by the ALJ in assessing his residual functional capacity. Tr. 20. Specifically, plaintiff asserts that a late January 2003 declaration obtained from Dr. Richard Gray, his treating physician, shows that the substantial evidence in the record does not support the ALJ's residual functional capacity assessment. The undersigned disagrees.

In his declaration, Dr. Gray states that due to residuals from a leg injury plaintiff suffered in June 2001, more probably than not he has been unable to walk at a normal pace for one block on a rough or uneven surface, and cannot walk for more than one or two blocks without resting. Tr. 194-95. He further stated that plaintiff is less steady than a normal person when walking, that he limps and has less stamina than someone who has not suffered the injury he has, that he would not be able to stand and walk two out of eight hours per day for an entire work week, that he should use a cane if he felt unsteady, and that he would have difficulty going up steps. <u>Id.</u>

Before the court can determine whether reversal and remand for further administrative proceedings is proper based on Dr. Gray's declaration, it first must determine whether that evidence should in fact be considered. Plaintiff argues that under the Ninth Circuit's decisions in <u>Ramirez v. Shalala</u>, 8 F.3d 1449 (9th Cir. 1993), and <u>Harman v. Apfel</u>, 211 F.3d 1172 (9th Cir. 2000), remand is proper under sentence four of 42 U.S.C. § 405(g), which reads in relevant part: "The court shall have power to enter, upon the pleadings and

transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security with or without remanding the cause for a rehearing."  Defendant, citing <u>Orteza v. Shalala</u>, 50 F.3d 748 (9th Cir. 1995), <u>Clem v. Sullivan</u>, 894 F.2d 328 (9th Cir. 1990), and <u>Booz v. Secretary of Health and Human Services</u>, 734 F.2d 1378 (9th Cir. 1984), argues that this matter may be remanded for further consideration of the declaration only if the evidence contained therein is new and material, and plaintiff establishes good cause for failing to submit that evidence earlier.

Plaintiff, in turn, asserts that these factors only come into play if a remand is made under sentence six of 42 U.S.C. § 405(g), which provides in relevant part that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  Plaintiff argues such is not the case here, and therefore he need not establish newness, materiality or good cause for this court to consider Dr. Gray's declaration.

In essence, plaintiff is arguing that additional evidence submitted to the Appeals Council need not be new and material, and that the "good cause" requirement applies just to evidence submitted for the first time to federal court.  Curiously, however, neither party has discussed the most recent Ninth Circuit case on this issue, <u>Mayes v. Massanari</u>, 276 F.3d 453 (9th Cir. 2001).  As discussed below, the Court of Appeals in <u>Mayes</u> made quite clear that the question of whether good cause is required when additional evidence is submitted to the Appeals Council has not been decided in the Ninth Circuit.  In addition, a showing of newness and materiality is required for submission of additional evidence for the first time to the Appeals Council, as well as to the district court.

It is true that in <u>Ramirez</u>, the Ninth Circuit held it would consider on appeal the additional material submitted to the Appeals Council in that case. 8 F.3d at1451-52 (finding that although Appeals Council declined request for review, it did so after considering case's merits and examining entire record, including additional material).  In <u>Harman</u>, the Court of Appeals, citing to <u>Ramirez</u>, held that "[w]e properly may consider the additional materials because the Appeals Council addressed them in the context of denying Appellant's request for review." 211 F.3d at 1180; <u>see also</u> <u>Gomez v. Chater</u>, 74 F.3d 967, 971 (9th Cir. 1996) (citing to <u>Ramirez</u> for proposition that evidence submitted to Appeals Council is part of record on review to federal court).

1    In Mayes, however, the Ninth Circuit held that the district court in that case did not err in refusing

2    to remand the matter to the ALJ to consider the new evidence submitted to the Appeals Council. 276 F.3d

3    at 463.  Further, the Court of Appeals expressly stated it had not decided whether good cause is required to

4    review such evidence:

> We need not decide whether good cause is required for submission of new evidence to
> the Appeals Council, as [the claimant] conceded in her briefs that good cause was
> indeed required. In a petition for rehearing, which we deny, [the claimant] raises for the
> first time the argument that 20 C.F.R. § 404.970(b)(2001) requires the Appeals Council
> to receive new evidence without regard to the issue of good cause. Citing *Ramirez v.
> Shalala*, 8 F.3d 1449 (9th Cir.1993), [the claimant] belatedly argues that good cause is
> required only when new evidence is submitted to a district court. Mayes misapprehends
> *Ramirez*. Because the parties agreed that the new evidence submitted for the first time to
> the Appeals Council should be considered, *id.* at 1451-52, Ramirez does not address
> whether submissions to the Appeals Council are or are not subject to the good cause
> requirement.

11   Id. at 461 n.3 (emphasis added).  In other words, Ramirez, and those subsequent rulings (e.g., Harman and

12   Gomez) that rely on Ramirez, cannot be read to hold that the good cause requirement applies only when the

13   additional evidence is submitted for the first time to federal court.

14        Indeed, the Ninth Circuit in Mayes applied the standard set forth in 42 U.S.C. § 405(g) to determine

15   whether to remand that case in light of additional evidence submitted to the Appeals Council. Id. at 461-62.

16   Under that standard, to justify remand, the claimant must show that the additional evidence is both "new"

17   and "material" to determining disability, and that he or she "had good cause for having failed to produce

18   that evidence earlier." Id. at 462.  To be material under 42 U.S.C. § 405(g), "the new evidence must bear

19   'directly and substantially on the matter in dispute.'" Id. (citation omitted).  In addition, the claimant must

20   demonstrate a "reasonable possibility" that the new evidence "would have changed the outcome of the

21   administrative hearing." Id. (citation omitted).  To demonstrate "good cause," the claimant must show that

22   the new evidence "was unavailable earlier." Id. at 463.  The good cause requirement will not be met by

23   "merely obtaining a more favorable report once his or her claim has been denied." Id.

24        Here, however, the court need not determine whether plaintiff is required to show good cause for

25   not submitting the additional evidence earlier,[2] as he has not shown there is a reasonable possibility such

26

27   ──────────────

28        [2]If a showing of good cause is in fact required, the court notes that plaintiff most likely would be unable to meet it.
Plaintiff has provided no reason why he could not have obtained, and then submitted to the ALJ, the opinions contained in Dr.
Gray's January 2003 declaration prior to November 25, 2002, the date the ALJ issued his decision.

evidence would have changed the outcome of his hearing. Id. at 462; 20 C.FR. 404.970(b).[3]  Other than the declaration of Dr. Gray, none of the medical evidence in the record shows that plaintiff had any significant physical functional limitations.  In late May 1999, plaintiff visited the emergency room after having been struck on the head with a bottle. Tr. 90.  Although plaintiff was diagnosed with "[a]cute blunt head trauma with mild secondary concussion," he had "no neurofocal deficits of motor function," and a CT scan of his brain was normal. Tr. 91.

Plaintiff visited the emergency room again in early November 1999, after having been in a motor vehicle accident. Tr. 104.  While plaintiff had some pain in his left shoulder, his physical examination was otherwise fairly unremarkable, with negative spinal x-rays. Tr. 98, 104.  He was diagnosed with "a more mechanical rotator cuff injury" than a radiculopathy. Tr. 105.  Similar findings were made later that month and in early December, and a rotator cuff tear was ruled out. Tr. 103, 106.

During a physical examination in early June 2000, plaintiff reported experiencing tenderness in his cervical and dorsolumbar spine. Tr. 118.  Plaintiff also was noted to have some edema and tenderness in his right ankle and diffuse impingement and tendonitis signs in his left shoulder. Id.  On the other hand, there was no atrophy in either shoulder, upper extremity strength was only slightly diminished, and there was full extension and no muscle atrophy in his hands. Tr. 118-19.  Lower extremity muscle strength, tone and bulk were intact as well. Tr. 119.

The examining physician found "no evidence to suggest radiculopathy or disc disease" in plaintiff's back, and a "grossly unremarkable" hand examination despite plaintiff's complaints of arthritis. Id.  With respect to plaintiff's left shoulder and neck pain complaints, the examining physician felt the findings were "suggestive of cervical and left shoulder sprain," but stated that "[f]ull recovery" was expected as long as plaintiff pursued appropriate treatment. Id.  It also was noted that there was a question of right ankle sprain. Tr. 120.  In regard to plaintiff's ability to work, the examining physician opined as follows:

> In terms of the claimant's physical examination today, his ability to do work and related activities such [as] sitting, standing and moving about appears to be intact. . . .  His ability to lift, carry, push and pull appears to be intact.  There is no focal weakness, nor

---

[3]The Commissioner's regulations also require that additional evidence submitted for the first time to the Appeals Council be "new and material." 20 C.F.R. § 404.970(b).  The Commissioner does not define "new" and "material."  However, there is no reason to believe the Ninth Circuit would apply a different meaning to those terms in determining whether remand under 42 U.S.C. § 405(g) is appropriate, than the Commissioner would in determining whether to grant review under 20 C.F.R. § 404.970(b).

1  is there evidence of loss of muscle mass.  His ability to climb, stoop, kneel, handle,
2  crouch and crawl appears to be intact.  His ability to reach, handle, grasp and perform
   fine and gross manipulations appears intact based on today's exam.

3  Id.  While it is true plaintiff appears to have suffered a serious leg injury in June 2001, which required him to

4  undergo a surgical procedure to repair it, he appeared to be on the road to recovery and doing well with

5  respect thereto through at least early December 2001. Tr. 161, 165, 191-92.

6      While it is also true that Dr. Gray's diagnostic notes from early December 2001, state that "[i]f he

7  continues to be painful and a workup reveals a good possibility of a nonunion" that might require further a

8  surgical procedure (Tr. 192), nothing in the medical evidence in the record indicates plaintiff's condition

9  deteriorated or resulted in significant residual physical functional limitations.  As such, plaintiff has not

10  shown there is a reasonable possibility that the statements contained in Dr. Gray's declaration would have

11  changed the outcome of the hearing.

12      In addition to contesting the ALJ's assessment of his residual functional capacity, plaintiff argues

13  that Dr. Gray's declaration shows the ALJ erred in finding he did not require the use of a cane. Tr. 20.  As

14  discussed above, however, plaintiff has not met his burden of demonstrating that remand is appropriate in

15  this case based on the statements contained in that declaration.  Further, as noted by the ALJ, none of the

16  other medical evidence in the record contains any indication plaintiff was prescribed or, indeed, required the

17  use of a cane. Id.

18  II.      The ALJ Erred in Evaluating Plaintiff's Mental Condition

19      Plaintiff argues the ALJ made a number of errors in evaluating the medical evidence in the record

20  regarding his mental impairments.  First, plaintiff asserts the ALJ erred in evaluating his drug and alcohol

21  use.  The undersigned disagrees.  A claimant may not be found disabled if alcoholism or drug addiction

22  would be "a contributing factor material to the Commissioner's determination" that the claimant is disabled.

23  Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir. 2001) (citing 42 U.S.C. §§ 423(d)(2)(C),

24  1382c(a)(3)(J)).  Similarly, the Social Security Regulations also require that the Commissioner determine

25  whether "drug addiction or alcoholism is a contributing factor material to the determination of disability."

26  Id. (citing 20 C.F.R. §§ 404.1535(a), 416.935(a)).

27      To determine whether a claimant's alcoholism or drug addiction is a materially contributing factor,

28  the ALJ first must conduct the five-step disability evaluation process "without separating out the impact of

   alcoholism or drug addiction." Id. at 955. If the ALJ finds the claimant is not disabled, "then the claimant is

1   not entitled to benefits." Id.  If the claimant is found disabled "and there is 'medical evidence of [his or her]

2   drug addiction or alcoholism,'" the ALJ proceeds "to determine if the claimant 'would still [be found]

3   disabled if [he or she] stopped using alcohol or drugs.'" Id. (citing 20 C.F.R. §§ 404.1535, 416.935).  Thus,

4   if a claimant's current limitations "would remain once he [or she] stopped using drugs and alcohol," and

5   those limitations are disabling, "then drug addiction or alcoholism is not material to the disability, and the

6   claimant will be deemed disabled." Ball v. Massanari, 254 F.3d 817, 821 (9th Cir. 2001).

7          The ALJ found that plaintiff did "not have a severe mental impairment in the absence of drug and

8   alcohol abuse." Tr. 20.  Plaintiff argues the ALJ erred here in failing to determine whether any substance

9   abuse would be a contributing factor material to a finding of disability.  While it is true that technically the

10  ALJ did not make this specific finding, it is difficult to understand how this error is harmful.  Indeed, not

11  surprisingly, plaintiff does not quarrel with the ALJ's failure to do so.  That the ALJ went on to determine

12  whether plaintiff had a mental impairment apart from his substance abuse, necessarily implies that he did not

13  find such abuse to be material.  In any event, plaintiff cannot complain, as the result is the same as if the ALJ

14  expressly had made such a finding.  As such, any error on the part of the ALJ in this regard must be seen as

15  harmless. See Batson v. Commissioner of the Social Security Administration, 359 F.3d 1190, 1197 (9th Cir.

16  2004) (applying harmless error standard); Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990) (holding

17  ALJ committed harmless error).

18         Plaintiff further argues, however, that the ALJ ignored the Commissioner's prescribed method for

19  evaluating his mental condition as set forth in 20 C.F.R. § 404.920a, which requires the ALJ to document in

20  his decision the degree of plaintiff's functional limitation in the areas of activities of daily living, social

21  functioning, concentration, persistence or pace, and episodes of decompensation. 20 C.F.R. § 404.920a(c)-

22  (e).  The undersigned agrees.  While the ALJ did set forth a summary of some of the medical evidence in the

23  record concerning plaintiff's mental impairments, he provided no interpretation or analysis of that evidence

24  other than to merely state that plaintiff "does not have a severe mental impairment in the absence of drug

25  and alcohol abuse." Tr. 20.  Such a finding is wholly insufficient to meet the requirements of 20 C.F.R. §

26  404.920a or the standard for review of medical evidence in general.

27         Plaintiff also argues the ALJ erred in failing to provide any evaluation of the opinions and reports of

28  Bruce A. Eather, Ph.D.  and Stephen Klein, Ph.D., two of his examining physicians.  The undersigned

1    agrees.  The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the

2    medical evidence.  <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the

3    record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the

4    ALJ.  <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must

5    be upheld."  <u>Morgan v. Commissioner of the Social Security Administration</u>, 169 F.3d 595, 601 (9th Cir.

6    1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact

7    inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts

8    "falls within this responsibility."  <u>Id.</u> at 603.

9        In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be

10    supported by specific, cogent reasons."  <u>Reddick</u>, 157 F.3d at 725.  The ALJ can do this "by setting out a

11    detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

12    thereof, and making findings."  <u>Id.</u>  The ALJ also may draw inferences "logically flowing from the evidence."

13    <u>Sample</u>, 694 F.2d at 642.  Further, the court itself may draw "specific and legitimate inferences from the

14    ALJ's opinion."  <u>Magallanes v. Bowen</u>, 881 F.2d 747, 755, (9th Cir. 1989).

15        The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of

16    either a treating or examining physician.  <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a

17    treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and

18    legitimate reasons that are supported by substantial evidence in the record."  <u>Id.</u> at 830-31.  However, the

19    ALJ "need not discuss *all* evidence presented" to him or her.  <u>Vincent on Behalf of Vincent v. Heckler</u>, 739

20    F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in the original).  The ALJ must only explain

21    why "significant probative evidence has been rejected."  <u>Id.</u>; <u>see also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07

22    (3d Cir. 1981); <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

23        In general, more weight is given to a treating physician's opinion than to the opinions of those who

24    do not treat the claimant.  <u>Lester</u>, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of

25    a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings."

26    <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th

27    Cir. 2001); <u>Magallanes</u>, 881 F.2d at 75.  An examining physician's opinion is "entitled to greater weight

28    than the opinion of a nonexamining physician."  <u>Lester</u>, 81 F.3d at 830-31.  A nonexamining physician's

1  opinion may constitute substantial evidence if "it is consistent with other independent evidence in the

2  record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

3      In early January 1999, Dr. Klein diagnosed plaintiff with a "[d]epression disorder – possible causes

4  including medical condition, ETOH, [and a] personality disorder." Tr. 113.  Dr. Klein found plaintiff to be

5  severely (i.e., the "[i]nability to perform one or more basic work-related activites") limited in his ability to

6  relate appropriately to co-workers and supervisors, interact appropriately in public contacts, and respond

7  appropriately to and tolerate the pressures and expectations of a normal work setting. Tr. 112, 114.  He

8  also found him to be moderately (i.e., a "[s]ignificant interference with basic work-related activities")

9  limited in his ability to exercise judgment and make decisions." Id.  Dr. Klein estimated plaintiff would be so

10  limited for a period of six to twelve months, although he also felt plaintiff had overstated his difficulties on

11  testing, and had questions regarding his current use of alcohol and prescription drugs. Tr. 111, 115.

12      In late January 2000, Dr. Eather assessed plaintiff with a personality disorder with antisocial and

13  dependant traits and a provisional diagnosis of depression. Tr. 108.  He found plaintiff to be markedly (i.e.,

14  a "[v]ery significant interference with basic work-related activities") in his ability to respond appropriately

15  to and tolerate the pressures and expectations of a normal work setting. Tr. 107, 109.  Further, he deemed

16  plaintiff to be moderately limited in his ability to: understand, remember and follow complex (more than two

17  step) instructions; learn new tasks; exercise judgment and make decision; relate appropriately to co-workers

18  and supervisors; interact appropriately in public contacts; control physical or motor movements; and

19  maintain appropriate behavior. Tr. 109.

20      Dr. Eather noted that despite plaintiff's "depressed mood," he had exhibited a "relatively 'normal'

21  benign" mental status examination, and he was coherent, with linear thought processes. Id.  On the other

22  hand, plaintiff did have poor eye contact and lantency in his verbal responses. Id.  Dr. Eather nevertheless

23  felt plaintiff's prognosis was "likely to improve" with appropriate treatment, but estimated that he would

24  remain limited to the extent noted above for a period of three months to indefinitely. Tr. 110.

25      In early January 2002, Dr. Eather again evaluated plaintiff, this time diagnosing him with a severe

26  major depressive disorder with mild psychotic features, as well as a personality disorder. Tr. 148.  Plaintiff

27  was found to be markedly limited in his ability to: understand, remember and follow complex instructions;

28  exercise judgment and make decisions; relate appropriately to co-worker and supervisors; and respond

appropriately to and tolerate the pressures and expectations of a normal work setting. Tr. 149.  He also was found to be moderately to markedly limited in his ability to learn new tasks, and moderately limited in his ability to: understand, remember and follow simple (one or two step) instructions; perform routine tasks; interact appropriately in public contacts; control physical or motor movements; and maintain appropriate behavior.  Id.  Dr. Eather estimated plaintiff would be so limited for a period of six months to indefinitely, noting that he had a "[p]oor prognosis" for a return to work, secondary to a combination of mental and physical factors and because of his "strong 'disability conviction.'" Tr. 150.

Although the ALJ did summarize Dr. Klein's findings regarding the irregularities in plaintiff's test results (Tr. 18), he provided no discussion, let alone analysis, of the various mental functional limitations that Dr. Klein also found.  The ALJ made no mention at all of Dr. Eather's findings and opinions, except to note that plaintiff was evaluated by him in early January 2002. Tr. 20.  As such, the ALJ gave no reasons for why the significant limitations found by both psychologists were or were not credible.

There is other evidence in the record to indicate plaintiff's mental impairments may not be severe. For example, in early June 2000, Barry A. Carlaw, Ph.D., found plaintiff's mental status was largely intact. Tr. 124-26.  He diagnosed plaintiff with an adjustment disorder with depressed mood, but believed that he was malingering, and gave him a global assessment ("GAF") score of "71-80." Tr. 126-27.  Accordingly, Dr. Carlaw found "no indication that his level of reported symptomotology" was "affecting his adaptive levels of functioning and day-to-day ability to care for himself." Tr. 127.  He concluded that plaintiff was "gainfully employable." Id.  The two non-examining consulting psychologists in the record, furthermore, opined that plaintiff had no severe mental impairment. Tr. 128, 140.

It is true that it is the responsibility of the ALJ to resolve conflicts and ambiguities in the medical evidence, and that where the opinion of an examining physician is based on independent clinical findings, it is within the ALJ's discretion to disregard the conflicting opinion in another examining physician's diagnosis. Reddick, 157 F.3d at 722; Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  Here, however, because the ALJ provided no analysis at all of Dr. Klein's or Dr. Eather's findings (or frankly of any of the other medical evidence in the record concerning plaintiff's mental impairments), the court is not able to determine the actual basis of the ALJ's finding that those impairments were not severe.  As such, the ALJ erred.  On remand, therefore, the Commissioner shall re-evaluate the medical evidence regarding plaintiff's

mental impairments, including that relating to his diagnosed personality disorder, to determine whether those impairments are severe, and what effect, if any, they have on his residual functional capacity and his ability to perform other work in the national economy.

III.     The ALJ Did Not Err in Discounting Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982).  The court should not "second-guess" this credibility determination.  <u>Allen</u>, 749 F.2d at 580.  In addition, the court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence.  <u>Id.</u> at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence.  <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief."  <u>Lester</u>, 81 F.3d at 834 (9th Cir. 1996).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints."  <u>Lester</u>, 81 F.3d at 834; <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  <u>Lester</u>, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering.  <u>O'Donnell v. Barnhart</u>, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid."  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms.  <u>Id.</u>

The ALJ discounted plaintiff's credibility in part because his allegations of disability based on his physical impairments were not consistent with the medical evidence in the record.  Tr. 20.  A determination that plaintiff's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement.  <u>Regennitter v. Commissioner of SSA</u>, 166 F.3d 1294, 1297 (9th Cir. 1998).  Plaintiff argues the ALJ's finding is inconsistent with the reports of Dr. Gray and of several of the examining psychologists

1  in the record.  The undersigned disagrees.

2       First, the reports of the examining psychologists are not relevant to plaintiff's allegations regarding

3  his physical impairments.  Second, as discussed above, other than the declaration of Dr. Gray, which was

4  not available for the ALJ to consider and which is not a proper basis upon which to grant remand, much of

5  the information contained in Dr. Gray's reports (and in the other medical evidence in the record regarding

6  his physical impairments) show those impairments to be far from disabling.  As such, the ALJ did not err in

7  discounting plaintiff's credibility for this reason.

8       The ALJ also discounted plaintiff's credibility in part for not having seen Dr. Gray since December

9  2001, and for not showing up for four more scheduled visits in February and March 2002. Tr. 20.  Failure

10 to assert a good reason for not seeking, or following a prescribed course of, treatment, or a finding that a

11 proffered reason is not believable, "can cast doubt on the sincerity of the claimant"s pain testimony." Fair v.

12 Bowen, 885 F.2d 597, 603 (9th Cir. 1989).  Plaintiff provided no valid explanation for why he had not seen

13 Dr. Gray since December 2001, or why he canceled the additional appointments.  As such, it was not

14 unreasonable for the ALJ to find her left leg problems were not as severe as alleged.

15      The ALJ further discounted plaintiff's credibility for not requiring any treatment for his depression.

16 Tr. 20.  The record, however, does indicate that although plaintiff reported in June 2000, not having any

17 prescriptions for depression (Tr. 122), and there is no indication that he sought recommended mental health

18 counseling apart from alcohol and drug treatment (Tr. 20, 110-11, 115, 150), he later was prescribed both

19 Prozac and Celexa (Tr. 149, 185-86, 188, 214).  As such, this is not a clear and convincing basis upon

20 which to discount plaintiff's credibility due to a failure to seek or follow a prescribed course of treatment.

21 Nevertheless, as discussed above, the ALJ did properly discount plaintiff's credibility in part to due a lack of

22 recent treatment records regarding his alleged left leg symptoms.

23      The ALJ further noted the record contained evidence of plaintiff's "drug-seeking behavior." Tr. 20-

24 21.  Smolen, 80 F.3d at 1284 (ALJ may consider other testimony that appears less than candid).  In early

25 November 1999, plaintiff visited the emergency room after having been in a motor vehicle accident. Tr. 104.

26 Except for some pain in his left shoulder, his physical examination was largely normal. Id.  Although

27 plaintiff was offered some Tylenol for his pain, he rejected it, "stating it was not strong enough." Id.  The

28 attending physician further noted that he did "not seem to be interested in any type of compliance with any

treatment plan that will actually bring him back to his level of function," that he was "really only interested in ingesting narcotic analgesics in addition to his alcohol," and that he perseverated regarding the question as to when he was "going to get his prescription narcotics." Tr. 105. Another diagnostic note in the record states plaintiff's behavior was "very suggestive of drug seeking." Tr. 155. Accordingly, the ALJ did not err in discounting plaintiff's credibility for this reason as well.

The ALJ also found evidence in the record to indicate plaintiff was malingering. Tr. 21. Dr. Carlaw concluded plaintiff was malingering, as evidenced by the significant exaggerations he gave during testing and his affect and presentation during his evaluation. Tr. 126-27. One of the non-examining consulting physicians in the record also found malingering, and the other non-examining consulting physician noted that his self-reports were not credible. Tr. 129, 143. While Dr. Klein felt plaintiff's performance on testing was more indicative of overstating his difficulties rather than malingering per se (Tr. 111, 115), his report too is indicative that plaintiff has not been completely truthful regarding his symptoms.

Lastly, the ALJ discounted plaintiff's credibility in part due to inconsistent statements regarding drug and alcohol abuse. Tr. 21; Smolen, 80 F.3d at 1284 (ALJ may consider prior inconsistent statements). The undersigned finds the evidence in the record supports this finding as well. For example, while plaintiff denied any alcohol use in January 1999, in May and November 1999, he did admit to drinking "alcohol excessively on a daily basis" and to "kill the pain." Tr. 90, 104, 112, 114. In early June 2000, he reported that he drinks "alcohol every time he goes to see a doctor," and that he drinks "regularly on the weekends." Tr. 116. When asked if he had a drinking problem, plaintiff first told Dr. Carlaw that he did not, but then he admitted he drinks "six to ten 22-ounce beers one time per week." Tr. 122. In October 2000, plaintiff reported drinking "two to three beers every other day and two six-packs on the weekend," but that his last drink was "more than 30 days ago." Tr. 137.

While plaintiff has denied using drugs (Tr. 112, 114, 116, 137), Dr. Klein suspected that he might in fact have a drug problem based on his statements and behaviors. Tr. 111, 115. In addition, during the psychological evaluation performed by Dr. Carlaw, plaintiff first denied "any current use of illicit drugs." Tr. 122. When asked a second time whether he engaged in any illicit drug use, plaintiff replied that he had not, but then asked what Dr. Carlaw meant by "illicit." Id. Plaintiff later stated "the last time he used illicit drugs was six to eight months ago" when he claimed he had "used cocaine on one occasion." Id. Thus, the ALJ

1   properly discounted plaintiff's credibility due to these inconsistencies as well.

2          For all these reasons the undersigned finds the ALJ did not err in discounting plaintiff's credibility.

3   Plaintiff argues that because the ALJ did not properly evaluate the medical evidence in the record, it would

4   be premature to ratify the ALJ's determination on this issue, and the Commissioner should revisit it in the

5   context of the expanded record on remand.  The ALJ, however, gave a number of reasons (each of them

6   valid, as discussed above) for why plaintiff was not credible, most of which are not dependent on the issue

7   of whether the ALJ's findings regarding the medical evidence in the record concerning plaintiff's mental

8   impairments were proper.  Also as discussed above, plaintiff has not shown there is a reasonable possibility

9   that Dr. Gray's declaration would have changed the outcome of the hearing.

10         Plaintiff further argues it would be unfair to declare his testimony on remand is not credible.  That

11  the undersigned finds the ALJ's credibility determination was proper, does not prohibit the Commissioner

12  from finding any future testimony to be credible.  Further, declining to affirm the ALJ's detailed and well-

13  supported findings on this issue would in essence be giving plaintiff another bite at the credibility apple on

14  remand.  The court has refused to grant such a bite to the Commissioner on many prior occasions, and it is

15  only fair to apply the same standard to the other side as well.  Plaintiff had his chance to establish the ALJ

16  erred in finding him not credible, but has failed to do so.

17  IV.    The ALJ Properly Evaluated the Lay Witness Testimony

18         Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into

19  account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to

20  each witness for doing so." Lewis v. Apfel, 236 F.3d, 503, 511 (9th Cir. 2001).  An ALJ may discount lay

21  testimony if it conflicts with the medical evidence. Id.; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir.

22  1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence).  In rejecting

23  lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for

24  dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those

25  reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512.  The ALJ also may

26  "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

27         The ALJ discounted the testimony of the lay witness for the following reasons:

28         [T]he undersigned has also considered the lay testimony of Deborah Young.  However,
           her testimony is not fully credible since it is contradicted by the objective medical

REPORT AND RECOMMENDATION
Page - 15

evidence.  She also documents the seriousness of the claimant's alcohol use.  Moreover, it appears that Ms. Young has not been entirely forthcoming about her relationship with the claimant or vice versa.  In a form completed for the Social Security Administration in November 2000, Ms. Young characterized her relationship to the claimant as that of roommate (Exhibit 4E, p. 1).  In medical records she is listed as both his girlfriend and wife (Exhibit 13F, pp. 16, 26, and 29).  On December 18, 2001, Dr. Romney noted that the claimant's "wife" reported sleep apnea (Exhibit 14F, p. 5).  Dr. Romney stated further that he would defer a sleep lab until the claimant's "wife" returned from Florida (Exhibit 14F, p. 4).  Then, at the hearing, Ms. Young testified that she is a friend and sees the claimant about four times a week.

Tr. 21.  Plaintiff argues that with respect to his relationship with Ms. Young, the ALJ did not identify a material inconsistency, and that the record does not support any inference that Ms. Young either alleged or implied she did not have a close relationship with him.  However, it is one thing to identify yourself as just a roommate, and quite another to proclaim yourself as the other's spouse.  In addition, the ALJ did not find Ms. Young's testimony lacked credibility because of the nature of her relationship with plaintiff, but rather that she appeared to be not entirely truthful in her statements regarding that relationship.  In any event, the ALJ also properly found Ms. Young's statements to be inconsistent with the objective medical evidence in the record, which, at least with respect to plaintiff's physical impairments, it is. Tr. 217-19.

V.      The ALJ Erred in Finding Plaintiff Not Disabled at Step Five of the Disability Evaluation Process

        To determine whether a claimant is entitled to disability benefits, the ALJ engages in a five-step sequential evaluation process. 20 C.F.R. § 404.1520.  If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id.  Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.

        A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id.  However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the

1    medical or other evidence." Id. at *7.

2         If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation

3    process the ALJ must show there are a significant number of jobs in the national economy the claimant is

4    able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(d)-(e),

5    416.920(d)-(e).  The ALJ can do this through the testimony of a vocational expert or by reference to the

6    Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock

7    v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

8         An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical

9    posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d

10   1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the

11   medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

12   Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by

13   the medical record." Embrey, 849 F.2d at 422 (citations omitted).  The ALJ, however, may omit from that

14   description those limitations he finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)

15   (because ALJ included all limitations that he found to exist, and those findings were supported by

16   substantial evidence, ALJ did not err in omitting other limitations claimant failed to prove).

17        Here, as discussed above, the ALJ erred in evaluating the medical evidence in the record regarding

18   plaintiff's mental impairments.  As such, the ALJ's assessment of plaintiff's residual functional capacity, and

19   the vocational expert's testimony regarding the types and numbers of jobs plaintiff could do, were not based

20   on an accurate evaluation of that evidence.  Therefore, on remand, in addition to re-evaluating that

21   evidence, the Commissioner shall reconsider plaintiff's residual functional capacity and ability to perform

22   other jobs existing in significant numbers in the national economy.

23   VI.    This Case Should Be Remanded for Further Administrative Proceedings

24        The court may remand a case "either for additional evidence and findings or to award benefits."

25   Smolen, 80 F.3d at 1292.  Benefits may be awarded where "the record has been fully developed" and

26   "further administrative proceedings would serve no useful purpose." Id.; Holohan v. Massanari, 246 F.3d

27   1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

28            (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's]
             evidence, (2) there are no outstanding issues that must be resolved before a

REPORT AND RECOMMENDATION
Page - 17

determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain as to the effect plaintiff's mental impairments have on his ability to perform other work existing in significant numbers in the national economy at step five of the disability evaluation process, this case should be remanded to the Commissioner for further administrative proceedings in accordance with the findings set forth herein.

<u>CONCLUSION</u>

Based on the foregoing discussion, the court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **October 7, 2005**, as noted in the caption.

DATED this 14th day of September, 2005.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION
Page - 18